IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANCISCO FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cv-02499-GEB-JFM |
| | ) | |
| v. | ) | ORDER GRANTING AND DENYING IN |
| | ) | PART DEFENDANTS' MOTIONS FOR |
| CHRIS VON KLEIST; JACK MARTIN; | ) | SUMMARY JUDGMENT |
| MARK HENDRY; LEIGH MCDANIELS; BEN | ) | |
| W. KRAEMER; VANGIE PORRAS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Jack Martin, Mark Hendry, Leigh McDaniels, Ben Kraemer and Vangie Porras (collectively, the "School Board Defendants") filed a motion for summary judgment on April 16, 2010, on Plaintiff's federal and state claims alleged in his second amended complaint. (Docket No. 29.) Defendant Chris Von Kleist also filed a motion for summary judgment on April 16, 2010. (Docket No. 27.) Each Defendant's motion asserts the qualified immunity defense to certain of Plaintiff's federal claims. Plaintiff filed an opposition to each motion. Plaintiff alleges claims against Defendant Von Kleist, the Superintendent of the Orland Unified School District (the "School District"), and members of the School District's Board of

Trustees, related to the termination of his employment as a school principal and classroom teacher.  Argument on Defendants' summary judgment motions was heard on June 21, 2010.

## I.  LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis in original).  This requires that the non-moving party "come forward with facts, and not allegations, [that] controvert the moving party's case."  Town House, Inc. v. Paulino, 381 F.2d 811, 814 (9th Cir. 1967) (citation omitted).  The Eastern District's Local Rule 260(b) further requires that "[a]ny party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  E.D. Cal. R. 260(b).  "If the moving party's statement of facts are not controverted in this manner, the Court may assume the facts as claimed by the moving party are admitted to exist without controversy."  Farrakhan v. Gregoire, 590 F.3d 989, 1002 (9th Cir. 2010) (quoting Beard v. Banks, 548 U.S. 521, 527 (2006)) (finding that a party opposing summary judgment who

"fail[s] [to] specifically challenge the facts identified in the [moving party's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts . . . .").

All reasonable inferences that can be drawn from the facts provided "must be drawn in favor of the non-moving party." Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).  However, only admissible evidence may be considered.  See Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (stating that "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment") (citations omitted); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (stating that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

## II.  STATEMENT OF UNCONTROVERTED FACTS

In his response to Von Kleist and the School Board Defendants' statements of undisputed facts, Plaintiff lists numerous facts as "disputed."  However, except as discussed below, Plaintiff's evidentiary support does not controvert the evidence submitted by Defendants.  See Town House, 381 F.3d at 814 (stating that the non-moving "party must come forward with facts . . . to controvert the moving party's case").  Where Plaintiff has failed to provide facts that specifically controvert Defendants' facts, Plaintiff is "deemed to have admitted the validity of the facts contained in [Defendants' statements of undisputed facts]."  Farrakhan, 590 F.3d at 1002 (quoting Beard, 548 U.S. at 527).  Accordingly, Defendants' many evidentiary objections are only addressed where necessary.

Plaintiff was first employed by the School District during the 2003 to 2004 school year as a teacher at North Valley High School.

(Pl.'s Response to Von Kleist's Statement of Undisputed Facts ("SUF") ¶ 4.)  During the summer of 2004, Plaintiff was employed as the summer school principal at North Valley High School. (Id.)  Plaintiff was rehired by the School District for the 2004 to 2005 school year as a special needs program teacher and the alternative education principal. (Id. ¶ 5.)  During the 2004 to 2005 school year, Plaintiff allocated eighty percent of his time to his position as the special needs program teacher and twenty percent of his time to his position as the alternative education principal. (Id.)  Plaintiff's employment with the School District, however, was interrupted during the 2004 to 2005 school year in October 2004, when Plaintiff was deployed to active duty with the Army National Guard. (Id.)  Plaintiff was on military leave from October 15, 2004 to February 8, 2006. (Id.; Von Kleist Apr. 8, 2010 Decl. ¶ 5.)

Upon his return from active duty, Plaintiff was rehired by the School District on February 9, 2006, as a special needs assessment teacher and alternative education principal. (Id. ¶ 6.)  Plaintiff was to allocate forty percent of his time to his role as a special needs assessment teacher and sixty percent of his time to his role as the alternative education principal. (Id.)  However, on March 21, 2006, Plaintiff was promoted to fill-in as the principal at the Mill Street School under an internship administrative credential. (Id. ¶ 7.)  The Mill Street School is a grade school that teaches kindergarten through second grade. (Id. ¶ 8.)  Plaintiff was rehired to be the principal at the Mill Street School for the subsequent 2006 to 2007 and then 2007 to 2008 school years. (Id. ¶¶ 8, 9.)  For each of these school years, Plaintiff was employed under a one-year

employment contract and an internship administrative credential.  (Id.)

Plaintiff's employment contract for the 2007 to 2008 school year includes the following "termination clause":

> The Principal's status as Principal and all of the Principal's rights under this Agreement may be terminated at any time for, but not limited to, breach of contract, and grounds enumerated in the Education Code; or the Principal's failure to perform his/her responsibilities as set forth in this Agreement, as defined by law, or as specified in the Principal's job description, if any. *The [School] District shall not terminate this Agreement pursuant to this paragraph . . . until a written statement of the grounds for termination has first been served upon the Principal.  The Principal shall then be entitled to a conference with the Superintendent at which time the Principal shall be given a reasonable opportunity to address his concerns.  The Principal shall have a right to have a representative of his/her choice at the conference.  The conference with the Board shall be the Principal's exclusive right to any hearing otherwise required by law.*

(Pl.'s Ex. 3) (emphasis added.)

Von Kleist, the Superintendent for the School District, declares that during the 2006 to 2007 school year, he "started receiving complaints about [Plaintiff,] . . . includ[ing] a grievance by teacher Victoria Haro, several complaints by teacher Carol Raner, a parent's written complaint, Union representative complaints reiterating [the] teachers' complaints about staff meetings . . ., and [a complaint from] teacher Laura Bryan . . . ."  (Von Kleist Apr. 8, 2010 Decl. ¶ 8.)  Bryan declares that she "thought many of [Plaintiff's] actions and comments to [her were] inappropriate and offensive" and "[Plaintiff's] language and suggestive references at staff meetings [were] . . . inappropriate."  (Bryan Decl. ¶ 2.)  In addition, Bryan declares that "[o]f most concern to [her] . . . was

[her] delayed 2006/2007 evaluation" which was provided by Plaintiff over three months late and included "low marks." (Id.) Von Kleist discussed with Plaintiff in March 2007 "Bryan's complaints, the need for timely evaluations, and the administrative policy in evaluations of teachers . . . ." (Pl.'s Response to Von Kleist's SUF ¶ 12.)

Bryan informed her union representative, John Seid, of her complaints about Plaintiff on May 21, 2007. (Von Kleist SUF ¶ 13.) Seid then informed Von Kleist of these complaints, and in August 2007, Bryan met with Von Kleist to discuss her concerns. (Id.; Von Kleist Apr. 8, 2010 Decl. ¶ 11.)

In September 2007, Plaintiff was called to Von Kleist's office for a meeting with Seid and Christine Sickles, the President of the Orland Unified School District Teachers Association. (Flores Decl. ¶ 12.)  The parties dispute what transpired at the September 2007 meeting.  Von Kleist declares that:

> At this meeting the allegations [concerning Plaintiff's interactions with Bryan] were presented to [Plaintiff] and he denied some and admitted others.  At the conclusion, I made certain orders to [Plaintiff] as follows: (a) that there were to be no reprisals against Laura Bryan or any other complainant, (b) to not invade her personal space, (c) to stay out of Laura Bryan's classroom, (d) stay away from her unless another adult was present, (e) to treat her as if she was his grandmother, (f) to cease any sexual innuendoes, (g) to follow the proper evaluation procedure, (h) not to do anything that would create a hostile work environment between teachers, and (i) to treat all teachers equally.  I advised [Plaintiff] that any violation of these orders could lead to discipline.  I had previously assigned Principal Linda Porter to thereafter do the evaluation for teacher Laura Bryan.

(Von Kleist Apr. 8, 2010 Decl. ¶ 14.)  Plaintiff, however, declares:

> Von Kleist told me that Laura Bryan had complained to him that I had not followed the contractual time line for the previous year's evaluation, that her evaluation was not fair, that she was intimidated

6

by me, and that I had made two comments that she
did not feel were professional.   Von Kleist
completed his comments by stating that I had
committed sexual harassment against Ms. Bryan.   I
was shocked and totally taken aback by those
comments.   I requested an immediate investigation
be conducted to protect me and the District from
the sexual harassment allegations . . . .   Von
Kleist told me, "Do not worry about it, these
things happen all the time, it will all blow over."
Von Kleist told me that I should be polite,
professional, give Ms. Bryan lots of space, and not
to be alone with her . . . .   I was never told by
Von Kleist to "cease all sexual innuendos" nor was
I told that any violation could lead to discipline.

(Flores Decl. ¶ 12.)

On September 14, 2007, Von Kleist had a meeting with Laurel
Hill-Ward, the individual in charge of placing student teachers with
the School District.   (Von Kleist's SUF ¶ 16.)   At this meeting, Hill-
Ward informed Von Kleist that she was going to pull two student
teachers from the Mill Street School due to Plaintiff's conduct.
(Id.)

In November 2007, Von Kleist received a complaint from
teacher Carol Raner, in which she stated Plaintiff had engaged in a
pattern of harassment and had created an intimidatory environment
towards her and some other female teachers.   (Von Kleist's SUF ¶ 19.)
Plaintiff met with Raner and Von Kleist on November 17, 2007, and
Plaintiff apologized to Raner.   (Id.)

In February 2008, Plaintiff entered Bryan's classroom while
she was teaching.   (Id.)   Bryan declares that Plaintiff "sat down and
stared at her for several minutes" and she "became very concerned and
eventually terrified."   (Bryan Decl. ¶ 4.)   Plaintiff, however,
declares that he entered Bryan's classroom and "sat down behind the
class"; he "did not sit . . . and stare at [Bryan]" but instead,
"observed the students . . . ."   (Flores Decl. ¶ 15.)

After this incident, on February 8, 2008, Von Kleist met with Bryan. (Von Kleist SUF ¶ 20.) Bryan told Von Kleist that Plaintiff had entered her classroom and remained there for some time. (Id.; Von Kleist Apr. 8, 2010 Decl. ¶ 17.) Von Kleist then directed Paul Boylan, the School District's attorney, to investigate Plaintiff's employment history. (Id.; Von Kleist Apr. 8, 2010 Decl. ¶ 17; Boylan Decl. ¶ 3.)

On February 11, 2008, Von Kleist served Plaintiff in person with a Notice of Immediate Administrative Leave. (Pl.'s Response to Von Kleist's SUF ¶ 21; Von Kleist Ex. E.) The Notice of Immediate Administrative Leave placed Plaintiff on "paid administrative leave, effective immediately, while [Von Kleist] decide[d] whether to terminate [Plaintiff] for insubordination associated with what appear[ed] to be a continuing and pernicious pattern of harassment." (Von Kleist Ex. E.)

Boylan conducted an investigation into Plaintiff's employment history and described his investigation as follows in his declaration:

> My investigation included interviews with two former superintendents from Hamilton Elementary School District (prior employment as a teacher), Kevin Donnelley (former Glenn County Sheriff) and Dewey Anderson (former Glenn County undersheriff and CHP Officer) (Employment application for a position with the Glenn County undersheriff and CHP Officer) (Employment application for a position with the Glenn County Sheriff Department), and the head of Chico State Student Teaching Program. I was informed by Mike Thomas and John Kissam (former Hamilton Elementary School District Superintendents) that [Plaintiff] was forced to resign from employment with the CHP due to allegations of traffic stops and sexual favors. . . . . . Mr. Thomas stated that while working as a teacher at Hamilton Elementary School District, [Plaintiff] had a very close personal relationship with a substitute teacher while he was living at the same time with another woman. Kevin Donnelley

1                 and Dewey Anderson confirmed that in their checking
on [Plaintiff's] background he had been terminated
2                 by the CHP due to inappropriate sexual offers in
traffic stops.  The head of the Chico State Student
3                 Teacher Program indicated that she would not place
student teachers in [Plaintiff's] classroom because
4                 of a history of problems with student teachers and
she further stated that he is a sexual predator.  I
5                 also reviewed all the complaints about [Plaintiff]
while he was Principal at Mill Street School.

6

7  (Boylan Decl. ¶ 3.)

8        After Plaintiff received the Notice of Immediate

9  Administrative Leave, he attended a meeting with Von Kleist, Boylan,

10  and Seid.  (Pl.'s Response to Von Kleist's SUF ¶ 22.)  The exact date

11  of this meeting is disputed, as is what transpired.  Von Kleist

12  declares that at this meeting, which he calls a "pre-termination

13  conference," Plaintiff "did not deny that he had gone into Laura

14  Bryan's classroom" and "Boylan confronted [Plaintiff] about prior

15  employment incidents involving females that he had discovered in his

16  investigation."  (Von Kleist Apr. 8, 2010 Decl. ¶ 22.)  Von Kleist

17  further declares Plaintiff "made no denials"; instead, Plaintiff

18  "requested to be put into a teaching position at the [School]

19  District's Fairview School."  (Id.)  In contrast, Plaintiff declares

20  that at the meeting "Boylan accused [him] of 'being alone' with Laura

21  Bryan when [he] was monitoring her classroom" and "Von Kleist stated

22  that he was going to move [him] into a teaching position and [he]

23  agreed with that decision."  (Flores Decl. ¶ 16.)  Plaintiff further

24  declares that "Von Kleist also stated that he had been in contact with

25  the Orland Teachers Union and California Association, discussing 'what

26  to do with [Plaintiff].'"  (Id.)  Further, Plaintiff declares that

27  several days after this meeting, at a meeting with Union

28  Representatives, Von Kleist referred to him as a "serial sexual

harasser" and stated that Plaintiff had "harassed a female" while
teaching at Hamilton Elementary School.  (Flores Decl. ¶ 17.)

After this meeting with Plaintiff, Von Kleist, Boylan and
Seid, the School District's Board of Trustees held a regularly
scheduled meeting on February 21, 2008.  (Pl.'s Response to Von
Kleist's SUF ¶ 23; Von Kleist Ex. F.)  At the February 21 Board of
Trustees meeting, Von Kleist requested and received authorization to
take disciplinary action against Plaintiff. (<u>Id.</u>)  Boylan then
prepared and served a Notice of Termination on Plaintiff on February
22, 2008.  (<u>Id.</u> ¶ 24; Von Kleist Ex. G.)  The Notice of Termination
lists "insubordination" and "history of harassment" as the "grounds
for [Plaintiff's] termination."  Specifically, the Notice of
Termination provides:

> **Grounds for Termination:**
>
> *Insubordination*: You have demonstrated the
> inability or unwillingness to follow the
> Superintendent's directives.  Despite repeated
> warnings and efforts to assist you to improve your
> performance, you have been chronically
> insubordinate, willfully violating the
> Superintendent's direct instructions to you.
> Instances of insubordination include but are not
> limited to:
> • Failure to follow instructions not to be with
>   Laura Bryan without another adult present.
> • Repeated undermining of the Superintendent's
>   authority, despite instructions to stop doing
>   so.
> • Failure to immediately turn in your keys as
>   instructed in the Superintendent's letter hand
>   delivered to you on February 11, 2008.
>
> *History of Harassment:* Investigation has revealed
> that you are a serial harasser with a long history
> of harassing women and employment related
> difficulties involving women.

(Von Kleist Ex. G.)

10

After Plaintiff was served with the Notice of Termination, Boylan received a letter from Plaintiff's counsel dated February 25, 2008, in which Plaintiff's counsel demanded that Plaintiff be paid for the entire term of his contract. (Von Kleist Ex. H.)  The letter further states that Plaintiff "is entitled to due process under Skelly and hereby makes demand for a hearing." (Id.)  Plaintiff ultimately was paid the full amount due under his contract for the 2007/2008 school year in monthly installments. (Pl.'s Response to Von Kleist's SUF ¶ 29.)

Von Kleist called a special meeting of the School District's Board of Trustees for March 7, 2008, at which the Board of Trustees passed Resolution 09-07/08 which ratified Plaintiff's termination. (Id. ¶ 26; Von Kleist Ex. I.)  The Resolution does not identify Plaintiff or his position by name but merely states that the "Board ratifies the Superintendent's decision to dismiss the administrator, effective immediately, from all employment with the District." (Id.) Board members Martin, Hendry and Kraemer were present at this meeting; Porras and McDaniel were absent. (Id.)

Von Kleist notified Plaintiff of the Board of Trustees' ratification of his decision to terminate Plaintiff from his position as principal in a letter dated March 7, 2008. (Pl.'s Response to Von Kleist's SUF ¶ 26; Von Kleist Ex. I.)  On March 14, 2008, Von Kleist also served Plaintiff with notice that he was "non reelected and [his] teaching services [would] not be required for the . . . 2008/2009 school year." (Von Kleist Ex. J.)

Boylan later faxed a letter dated March 14, 2008 to Plaintiff's counsel, in which he stated that Plaintiff had not obtained tenure as a teacher with the Orland Unified School District.

(Von Kleist SUF ¶ 28.)  Plaintiff does not dispute that his counsel received this letter but disputes Boylan's conclusion that he had not achieved tenure status as a classroom teacher.  (Pl.'s Response to Von Kleist SUF ¶ 28; Flores Decl. ¶ 21.)

Plaintiff declares that even though he asked for an investigation regarding the "false allegations of sexual harassment," leveled against him, no investigation was ever conducted.  (Flores Decl. ¶ 22.)  Further, Plaintiff declares:

> At no time, prior to or after my termination, was I given the opportunity to defend these false accusations against me.  I was not given a chance for a 'name-clearing' hearing.  I was never told that I could have an attorney address the Superintendent, or Board, before or after my termination to refute the charges against me.  I learned that the Board had approved, by vote, my termination when I saw an article in the newspaper about my termination.  At no time did the Board give me, or my attorney, the opportunity to refute the false charges against me, that the Board and Mr. Boylan used to terminate my employment.  Through my attorney, I requested a hearing by certified letter to counsel for the Board, on February 25, 2008. . . .  There was no response to that letter.  On June 16, 2008, I requested, as a tenured classroom teacher, to be returned to the classroom as a teacher.  That request was ignored.

(Flores Decl. ¶ 20.)

After Plaintiff's termination, an article was published in the Valley Mirror newspaper.  (McGlamery Decl. Ex. 7.)  The article states "[a]ccording to sources speaking on strict confidentiality, [Plaintiff] was pursuing a teacher at [the] Mill Street [School] where he has been [a] principal for two years.  The teacher in question did not respond favorably to his advances and it is alleged by people very close to the events, that [Plaintiff] retaliated by giving her a bad evaluation."  (Id.)

1  **IV.  DISCUSSION**

2  **A.  Liability of Defendants Porras and McDaniel**

3        The School District Defendants argue that Defendants "Porras

4  and McDaniel had nothing to do with Flores' dismissal" since they

5  "were absent on March 7, 2008, when the other School Board Defendants

6  voted to ratify Superintendent Von Kleist's termination of

7  [Plaintiff's] contract." (School Board Defs.' Mot. for Summ. J.

8  28:12-17.) Neither of Plaintiff's opposition briefs address this

9  argument nor the liability of School Board Defendants Porras and

10  McDaniel. Plaintiff apparently contends that liability attaches to

11  each individual board member since they "gave Von Kleist unfettered

12  discretion to issue whatever disciplinary action [Von] Kleist thought

13  was appropriate . . . without investigating the true facts." (Pl.'s

14  Opp'n to School Board Defs.' Mot. for Summ. J. 13:11-15.) Plaintiff,

15  however, has cited no authority in support of this proposition, nor

16  demonstrated that Defendants Porras and McDaniels may be held liable

17  for his claims as a result of the "unfettered discretion" they

18  allegedly gave to Defendant Von Kleist. Accordingly, Defendants

19  Porras and McDaniel's motions for summary judgment are granted on all

20  of Plaintiff's claims and they are dismissed as Defendants in this

21  case.

22  **B.  Plaintiff's Constitutional Claims Alleged Under 42 U.S.C. § 1983**

23        Plaintiff alleges three claims under 42 U.S.C. § 1983. "To

24  state a claim under § 1983, a plaintiff must allege both (1) a

25  deprivation of a right secured by the federal Constitution or

26  statutory law, and (2) that the deprivation was committed by a person

27  acting under color of state law." Anderson v. Warner, 451 F.3d 1063,

28  1067 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

Plaintiff alleges Defendants' actions violated his First Amendment rights as well as deprived him of a liberty and property interest in violation of his Fifth and Fourteenth Amendment rights.  All Defendants argue they are entitled to qualified immunity on these constitutional claims.  (School Board Defs.' Mot. for Summ. J. 14:28-15:2; Von Kleist Mot. for Summ. J. 16:1-2.)

**1.   Plaintiff's First Amendment Claim**

Under his "first cause of action," Plaintiff alleges his First Amendment rights have been violated since he was retaliated against, and eventually terminated from employment with the School District, because he held a position on the school board for the Hamilton Unified School District, a neighboring school district. (Second Amended Compl. ("SAC") ¶¶ 9-12.)  Defendant Von Kleist argues he is entitled to summary judgment on Plaintiff's First Amendment claim since "there is no evidence" that Plaintiff's position on the Hamilton Unified School District's board "had anything to do with [Plaintiff's] termination."  (Von Kleist Mot. for Summ. J. 12:20-21.) The School Board Defendants also move for summary judgment on this claim, arguing Plaintiff has not shown that he had a First Amendment right to sit on the board for the Hamilton Unified School District, and further, there is no evidence that "his membership on that board was a substantial or motivating factor for Von Kleist's decision to dismiss him or . . . the Board's decision to ratify Von Kleist's action."  (School Board Defs.' Mot. for Summ. J. 14:1-3.)  Plaintiff contends that certain of Von Kleist's statements to him "raise a genuine issue of material fact as to Von Kleist's true intent and motives regarding [his] termination . . . ."  (Pl.'s Opp'n to Von Kleist Mot. for Summ. J. 12:24-27.)

"When a government employee alleges that he has been punished in retaliation for exercising his First Amendment rights, courts must engage in a three part inquiry: To prevail, an employee must prove (1) that the conduct at issue is constitutionally protected, and (2) that it was a substantial or motivating factor in the [adverse action].  If the employee discharges that burden, (3) the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750 (9th Cir. 2001) (quoting Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996)).

Plaintiff, however, has not discharged his burden in opposing Defendants' summary judgment motions.  Plaintiff has cited no authority suggesting that his position as a board member for the Hamilton Elementary School District constitutes protected First Amendment activity.  However, whether Plaintiff's service on the board is protected activity need not be decided since Plaintiff has not presented evidence from which a reasonable inference can be drawn that his board position was a "substantial or motivating factor" underlying his termination.  Plaintiff relies solely on his averments that "Von Kleist told [him] that the Orland School District felt uncomfortable with [him] being on the School Board in the Hamilton Elementary School District" and that his "service as a School Board Member for the Hamilton School District . . . was troubling to Orland School District Board Members."  (Flores Decl. ¶ 27.)  These averments do not support a reasonable inference that Plaintiff's board position was a substantial or motivating factor for his termination from employment with the School District.  Accordingly, each Defendant's motion for

summary judgment on this claim is granted and each Defendant's
qualified immunity affirmative defense need not be decided.

**2.   Plaintiff's Fourteenth Amendment Claims**

Plaintiff alleges in his "second cause of action" that
Defendants violated his Fourteenth Amendment rights by depriving him
of a property and liberty interest; and in his "third cause of
action," that his procedural due process rights were violated because
he "was not given any opportunity for a hearing to clear his name, or
to address the charges and/or allegations made against him."  (SAC ¶
19.)  These allegations are construed as alleging claims under the
Fourteenth Amendment for deprivation of liberty and property interests
without due process.

"The Fourteenth Amendment protects individuals against the
deprivation of liberty or property by the government without due
process.  A section 1983 claim based upon procedural due process . . .
has three elements: (1) a liberty or property interest protected by
the constitution; (2) a deprivation of the interest by the government;
[and] (3) [a] lack of process."  Portman v. County of Santa Clara, 995
F.2d 898, 904 (1993).

**a.   Plaintiff's Liberty Interest Claim**

Plaintiff alleges he has suffered a deprivation of a liberty
interest because "the manner of [his] termination imposed . . . a
stigma that has precluded his ability to continue working as a
[p]rincipal in public education."  (SAC ¶ 15.)  Von Kleist argues he
is entitled to summary judgment on this claim since "damage to . . .
reputation is not itself a deprivation of liberty."  (Von Kleist Mot.
for Summ. J. 12:3-9.)  The School Board Defendants also argue summary
judgment should be granted on this claim since "[t]here is no evidence

16

1 . . . that any Defendant publicized the reason for [P]laintiff's

2 termination." (School Board Defs.' Mot. for Summ. J. 18:21-22.)

3 Plaintiff rejoins, arguing he "has suffered the loss of his good name,

4 reputation and integrity by the false accusations against him."

5 (Pl.'s Opp'n to School Board Defs.' Mot. for Summ. J. 11:19-20; Pl.'s

6 Opp'n to Von Kleist's Mot. for Summ. J. 11:9-10.)

7    "When the government dismisses an individual for reasons

8 that might seriously damage his standing in the community, he is

9 entitled to notice and a hearing to clear his name.  To implicate

10 constitutional liberty interests, however, the reasons for dismissal

11 must be sufficiently serious to 'stigmatize' or otherwise burden the

12 individual so that he is not able to take advantage of other

13 employment opportunities.  Moreover, to infringe upon a

14 constitutionally protected liberty interest, the charges must be

15 published." Portman, 995 F.2d at 907 (quotations and citations

16 omitted).  Therefore, "a liberty interest is implicated in the

17 employment termination context if the charge impairs a reputation for

18 honesty or morality and that procedural protections of due process

19 apply if: (1) the accuracy of the charge is contested; (2) there is

20 some public disclosure of the charge; and (3) the charge is made in

21 connection with termination of employment." Matthews v. Harney Cnty.,

22 Or., School Dist. No. 4, 819 F.2d 889, 891-92 (9th Cir. 1987); see

23 also Brady v. Gebbie, 859 F.2d 1543, 1553 (9th Cir. 1988) (stating

24 that "a nontenured government employee has a liberty interest and is

25 entitled to a name-clearing hearing if the employer creates and

26 disseminates a false and defamatory impression about the employee in

27 connection with his termination") (quotation and citation omitted);

28 Fleisher v. City of Signal Hill, 829 F.2d 1491, 1495 (9th Cir. 1987)

(stating that "a hearing for a non-tenured employee based on
stigmatization is required only if the employer creates and
disseminates a false and defamatory impression about the employee in
connection with his termination") (quoting Codd v. Velger, 429 U.S.
624, 628 (1977) (per curiam)).

Plaintiff has not shown that the charges of insubordination
or harassment upon which his termination was based were ever publicly
disclosed by Defendants.  See Ordway v. Lucero, No. CV-04-1046 PCT
MHM, 2007 WL 951963, at *7-8 (D. Ariz. Mar. 27, 2007) (granting
summary judgment on plaintiff's liberty interest claim where there was
no evidence the charges underlying termination were ever publicly
disclosed).  Resolution No. 09-07/08, through which the School Board
ratified Superintendent Von Kleist's decision to terminate Plaintiff,
neither identifies Plaintiff by name nor states the grounds for his
termination.  (Hendry Decl. Ex. E.)  Further, neither the agendas nor
the minutes from the Board of Trustees' meetings identify Plaintiff by
name nor by his position.  (Hendry Decl. Exs. A, B, C, D.)  The
"Grounds of Termination," which state the alleged basis for
Plaintiff's termination were personally served on Plaintiff by Von
Kleist.  (Pl.'s Response to Von Kleist's SUF ¶ 23.)  Plaintiff's sole
evidence of publication constitutes the article published in the
Valley Mirror newspaper and his averments that:

> several days after the meeting of February 13,
> 2008, Chris Von Kleist referred to me as a 'serial
> sexual harasser' at a meeting with Union
> Representatives.  Additionally, Von Kleist stated
> that I had harassed a female while I was a teacher
> at Hamilton Elementary, as well as harassing a
> woman at Chico State.

(Flores Decl. ¶ 17.)  Plaintiff's averments, however, do not
demonstrate that the charges underlying his termination were ever

18

publicly disclosed by any Defendant.[1]  Further, Plaintiff has failed to offer evidence from which a reasonable inference may be drawn that any Defendant was responsible for the newspaper article which publicized his termination.  Therefore, each Defendant's summary judgment motion on this claim is granted and the qualified immunity issues need not be reached.

### b. Plaintiff's Property Interest Claims

Plaintiff also alleges he "lost a property interest . . . because Defendants divested him of his rights to continued employment in the field of public education."  (SAC ¶ 15.)  Von Kleist argues summary judgment should be granted on Plaintiff's procedural due process claim because Plaintiff had no property interest in either his position as a classroom teacher or school principal.  (Von Kleist Mot. for Summ. J. 11:2-19.)  The School Board Defendants also argue Plaintiff had "no protected property interest in his position." (School Board Defs.' Mot. for Summ. J. 17:28-18:1.)  Plaintiff rejoins, arguing he possessed a property interest in his position as a school principal since his contract required "cause" for termination and provided for a conference with the School District's Board of Trustees prior to termination.  (Pl.'s Opp'n to Von Kleist's Mot. for Summ. J. 8:19-28.)  Plaintiff also contends he possessed a property interest in his position as a classroom teacher because he had achieved "permanent" status at the time of his termination.  (Id. 10:1-4.)

---

[1]    Since Plaintiff's declaration does not demonstrate publication, the merits of Defendants' hearsay objection need not be decided.

19

1      "A[] [public] employee has a constitutionally protected

2  property interest in continued employment if he has a reasonable

3  expectation or a legitimate claim of entitlement to it.  A legitimate

4  claim of entitlement arises if it is created by existing rules or

5  understandings that stem from an independent source, such as state

6  law."  Matthews v. Oregon State Bd. of Higher Educ. ex. Rel. Univ. of

7  Oregon, 220 F.3d 1165, 1168 (9th Cir. 2000) (quotations and citations

8  omitted).  Constitutionally protected property interests can be

9  created not only by statute, but also by contract.  See San Bernadino

10 Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty., 825 F.2d

11 1404, 1408 (9th Cir. 1987) (stating that "a contract can create a

12 constitutionally protected property interest").  However, "not every

13 interference with contractual expectations [establishes a violation of

14 the Fourteenth Amendment]."  Id. (emphasis in original).

15     **i.   Plaintiff's Property Interest in his Position as a**
       **Classroom Teacher**

16

17     Defendant Von Kleist argues Plaintiff did not satisfy the

   requirements to achieve tenure as a classroom teacher and therefore

18 has no protectible property interest in continued employment as a

19 classroom teacher.  (Von Kleist Mot. for Summ. J. 11:2-19.)

20 Specifically, Von Kleist contends that Plaintiff had not completed

21 "two years of service" before his termination and therefore he had not

22 achieved tenured status under California law.  (Id. 11:4.)  Plaintiff

23 rejoins "there is a factual dispute [as] to whether [he] attained

24 'tenure' status[] sufficient to make him a permanent teacher . . . ."

25 (Pl.'s Opp'n to Von Kleist Mot. for Summ. J. 10:4-7.)

26

27     Under California law, "[a] certified employee is classified

   as permanent, i.e., acquires tenure, if, after having been employed

28 for two complete successive school years in a position requiring

certification qualifications, *he or she is reelected for the following year.*"  Bakersfield Elementary Teachers Ass'n v. Bakersfield City Sch. Dist., 145 Cal. App. 4th 1260, 1278-79 (2006) (citing Cal. Educ. Code § 44929.21(b)) (emphasis added).  Tenured teachers "possess a property right in continued employment . . . ."  Barthuli v. Board of Trustees of Jefferson Elementary Sch. Dist., 19 Cal.3d 717, 722 (1977) (citations omitted).  "[T]he state must comply with procedural due process requirements before it may deprive [a] permanent employee of [their] property interest [in continued employment] by punitive action."  Bostean v. Los Angeles Unified Sch. Dist., 63 Cal. App. 4th 95, 110 (1998).

Defendant Von Kleist argues that because Plaintiff did not teach for two complete, consecutive school years, Plaintiff did not achieve tenure as a classroom teacher.  Von Kleist relies upon Paul Boylan's calculation of Plaintiff's time of service which is stated in a letter addressed to Plaintiff's counsel and dated March 14, 2008. In this letter, Boylan lists the total number of days Plaintiff worked per school year and concludes that Plaintiff "never completed two years working as a teacher . . . [because] [n]either his military service nor the time he [spent] as an administrator adds to his classroom seniority." (Von Kleist Ex. K.)  Specifically, Boylan's letter notes that Plaintiff worked 184 days as a teacher during the 2003 to 2004 school year; 48 days during the 2004 to 2005 school year and 29 days during the 2005 to 2006 school year.  (Id.)

Plaintiff argues he had achieved tenure prior to his termination.  Plaintiff relies upon his declaration that "[a]t the time [his] employment was terminated by Von Kleist and the Orland Board of Trustees . . ., [he] had over four (going on five) years of

credible service." (Flores Decl. ¶ 21.)  Specifically, Plaintiff declares that his "calculation is based on the following: I started with Orland in 2003.  The school's superintendent took me out of my teacher position into a full-time administrator role after March 16, 2006."  (Id.)

Plaintiff's declaration, however, ignores that under California Education Code section 44800, a leave of absence for active military service "shall not count as part of the service required as a condition precedent to the classification of such employee as a permanent employee of the district, but such absence shall not be construed as a break in the continuity of the service of such employee for any purpose."  It is undisputed that Plaintiff left his employment with the Orland Unified School District to serve in the military from October 15, 2004 to February 8, 2006.  Under section 44800, this time period does not count towards Plaintiff's achievement of permanent teacher status.

Plaintiff also submits two letters he received as support for his tenure argument - one from Donald Brown, the District Superintendent in November 2003, and another from Paula Saramento - but this evidence does not dispute Boylan's conclusions.  Since Plaintiff has not provided evidence from which it can reasonably be inferred that he acquired permanent status as a classroom teacher, he has not demonstrated that he possessed a protectible property interest in continued employment as a classroom teacher.  Bakersfield Elementary Teachers Ass'n, 145 Cal. App. 4th at 1278-79 ("A certificated employee is classified as permanent, i.e., acquires tenure, if, after having been employed for two complete successive school years in a position requiring certification qualifications, he

or she is reelected for the following year.").  Therefore, each Defendant's summary judgment motion is granted on this claim, and the qualified immunity issues need not be reached.

> ### ii.  Plaintiff's Property Interest in his Position as a School Principal

Defendant Von Kleist and the School District Defendants also argue that under California law, administrators, such as school principals, cannot achieve tenure status and therefore have no protectible property interest in continued employment at their administrative positions.  (School District Defs.' Mot. for Summ. J. 17:28-18:10.)  Plaintiff, however, contends that under Perry v. Sinderman, 408 U.S. 593 (1972), he had a protectible property interest arising from a "mutually explicit understanding" that he was entitled to a hearing with Superintendent Von Kleist and the Board of Trustees before he could be terminated.  (Pl.'s Opp'n to Von Kleist Mot. for Summ. J. 9:19-28; Pl.'s Add'l Disputed Facts ¶ 4.)

Under California law, school "administrators[,] [including principals,] have no tenure in their positions" and therefore have no property interest in continued employment.  Grant v. Adams, 69 Cal. App. 3d 127, 133 (1977); see also Roberts v. Coll. of the Desert, 870 F.2d 1411, 1416 (9th Cir. 1989) (finding that "the law of California does not create . . . an expectation of continuation in an administrative position") (citations omitted).  Plaintiff, however, does not contend that he has a property interest in permanent employment as a principal; rather, he appears to argue that he has a protectible property interest arising from his contract in which the "mutually explicit understanding" is prescribed that he could not be terminated without first being provided with a conference with the Superintendent and the Board of Trustees.

23

"[A] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . ." <u>Perry v. Sindermann</u>, 408 U.S. 593, 602 (1972).  Plaintiff contends under the rationale of <u>Perry</u>, and the terms of his contract, he could not be terminated from his position without a hearing before the Superintendent and the Board of Trustees.

Plaintiff's contract provides:

> The Principal's status as Principal and all of the Principal's rights under this Agreement may be terminated at any time for, but not limited to, breach of contract, and grounds enumerated in the Education Code; or the Principal's failure to perform his/her responsibilities as set forth in this Agreement, as defined by law, or as specified in the Principal's job description, if any.  *The [School] District shall not terminate this Agreement pursuant to this paragraph . . . until a written statement of the grounds for termination has first been served upon the Principal.  The Principal shall then be entitled to a conference with the Superintendent at which time the Principal shall be given a reasonable opportunity to address his concerns.  The Principal shall have a right to have a representative of his/her choice at the conference.  The conference with the Board shall be the Principal's exclusive right to any hearing otherwise required by law.*

(Pl.'s Ex. 3) (emphasis added).  Defendants counter Plaintiff's position, arguing "[t]he provision in [Plaintiff's] contract regarding 'the conference' . . . with the Board is a mistake . . . .  If a separate conference with the board was contemplated, the provision would have said so."  (Reply 4:18-23.)

Under California law, an employment contract can expand the pre-removal rights of a government employee and give rise to a protectible property interest.  <u>Jones v. Palm Springs United Sch. Dist.</u>, 170 Cal. App. 3d 518, 529 (1985) (stating that "school

24

districts have the authority to grant predemotion rights to administrative employees during the term of their contracts"). In Jones, the plaintiff, a school superintendent, alleged a violation of procedural due process when her employment contract was terminated one year into a four year term without any prior evaluation, notice or a hearing. Id. at 522-23. The Jones court found that while plaintiff "possessed no statutory entitlement to her administrative position," certain school board rules and regulations providing for pre-termination procedures had been incorporated into her contract and gave rise to a protectible property interest. Specifically, the plaintiff in Jones had "a legitimate claim of entitlement to the benefits of [her] contract . . . ." Id. at 527-28. As in Jones, the terms of Plaintiff's contract provide him with a protectible property interest in "the right to remain in [his principal] position during the term of [his] written contract unless removed pursuant to the procedure[s] established by [his contract]." Id. at 528.

However, Plaintiff's employment contract only establishes a mutually explicit understanding that Plaintiff was entitled to a conference with the Superintendent prior to termination. The terms of Plaintiff's contract are ambiguous as to whether he is also entitled to a conference with the Board, and therefore, do not establish a mutually explicit understanding nor an entitlement to such a conference. Further, while Plaintiff cites to deposition testimony from two Board members in support of his argument that there was an implicit policy providing for a conference with the Board prior to termination, this deposition testimony does not support Plaintiff's

contention that such an implicit policy existed.[2]  Since there is no
mutually explicit understanding that Plaintiff was entitled to a
conference with the Board before he could be terminated, Plaintiff did
not have a protectible entitlement to such a conference, and each
Defendant's motion for summary judgment on Plaintiff's procedural due
process claim alleging that he was entitled to a conference with the
Board is granted.

At the June 21, 2010 hearing, Defendants also argued summary
judgment should be granted on Plaintiff's procedural due process claim
related to his employment as a principal because Plaintiff was paid
his full salary owed under his contract and therefore suffered no
injury.  Plaintiff, however, "need not prove actual damages to have an
actionable procedural due process claim." Weinberg v. Whatcom County,
241 F.3d 746, 752 (9th Cir. 2001).  "A procedural due process claim
 . . . is based on . . . an expectation that the system is fair and
has provided an adequate forum for the aggrieved to air his grievance
. . . .  This procedural aspiration can lead to the award of nominal
damages, even where substantive injury cannot be proved." Id.
Defendants, therefore, have not shown that Plaintiff's procedural due
process claim related to Defendants' failure to provide him with a
conference with the Superintendent prior to termination is precluded
because he was paid the full amount owed under his contract.

**iii.  Due Process**

Defendants argue in their joint reply brief that Plaintiff
was provided all of the process he was due under his contract since he
had a "pre-termination" hearing with Superintendent Von Kleist and

---

[2]    The School Board Defendants' objections to the use of this
deposition testimony need not be decided.

Paul Boylan.  (Reply 3:26-4:2.)  Further, Defendants argue Plaintiff "could have had representation at the meeting [with Von Kleist and Boylan] if he so chose, but . . . he chose not to . . . ."  (Id. 4:12-13.)  Defendants lastly argue Plaintiff's contract should not be construed as requiring a "pre-termination" conference with the Board.  (Id. 4:18-24.)

The record indicates that Defendant Von Kleist personally served Plaintiff with a Notice of Immediate Administrative Leave on February 11, 2008.  However, the Notice of Immediate Administrative Leave did not include a written statement of the grounds for termination; it merely stated that Plaintiff was placed on paid "administrative leave . . . while [Von Kleist] decide[s] whether to terminate [Plaintiff]  for insubordination associated with what appears to be a continuing and pernicious pattern of harassment." (Von Kleist Ex. E.)  On February 13, 2008, Plaintiff "was summoned to a meeting with . . . Von Kleist . . . Boylan, and . . . Seid." (Flores Decl. ¶ 16.)  A few days later, on February 22, 2008, Boylan served a Notice of Termination on Plaintiff, in which the grounds for his termination were stated.  After the Notice of Termination was served on Plaintiff, Plaintiff did not meet again with Superintendent Von Kleist.  Further, Plaintiff declares that "[he] was never told that [he] could have an attorney address the Superintendent, or Board, before or after [his] termination to refute the charges against [him]."  (Flores Decl. ¶ 20.)

Therefore, a factual dispute exists as to whether Plaintiff was provided with a "conference" with Superintendent Von Kleist in which he was given "reasonable opportunity to address his concerns" and the "right to have a representative" present, *after* being provided

with a written statement of the grounds for his termination, as is contemplated by Plaintiff's employment contract.  Because of this factual dispute each Defendant's summary judgment motion on Plaintiff's procedural due process claim related to Defendants' failure to provide a pre-termination conference with the Superintendent is denied.

### vi.  Defendants' Qualified Immunity Defense

Each Defendant asserts entitlement to qualified immunity on Plaintiff's procedural due process claim.  Specifically, Von Kleist argues he is entitled to "qualified immunity" since "Plaintiff's facts do not establish a constitutional violation in that there was no deprivation of a property or liberty interest."  (Von Kleist Mot. for Summ J. 15:21-23.)  Each School Board Defendant states in a conclusory fashion that they are "qualifiedly immune from liability" from Plaintiff's procedural due process claim.  (School Board Defs.' Mot. for Summ. J. 14:28-15:2.)  Plaintiff responds, arguing "[t]he law regarding the right to a hearing to protect due process rights is clear" and "Defendants have not made any showing that they reasonably believed that their failure to provide a hearing . . . was lawful . . . ."  (Pl.'s Opp'n to Von Kleist Mot. for Summ J. 16:7-10.)

> To defeat a claim of qualified immunity, the plaintiff must show that the law was clearly established at the time of the violation of the plaintiff's statutory or constitutional rights, such that a reasonably competent public official should have known he was violating the law governing his conduct.  Determining whether a public official is entitled to qualified immunity requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official believe the conduct lawful?

Ortega v. O'Connor, 146 F.3d 1149, 1154 (9th Cir. 1998).

In this case, the law was clearly established that due process protections are implicated "where the plaintiff has a legitimate expectation of continued employment" stemming from a mutually explicit understanding.  Roberts v. College of the Desert, 870 F.2d 1411, 1417 (9th Cir. 1988) (finding that college's officials were not entitled to qualified immunity on plaintiff's procedural due process claim that she was entitled to a hearing before she could be removed from her administrative position due to a mutually explicit understanding).  Further, no superintendent or board member could reasonably believe that Plaintiff was provided with a conference with the Superintendent after having been served with written notice of the grounds for his termination.  Accordingly, each Defendant's qualified immunity request on Plaintiff's procedural due process claim concerning Defendants' failure to provide Plaintiff with a conference with the Superintendent prior to termination is denied.

### C.  Plaintiff's Claim Under 42 U.S.C. § 1981

Defendants also seek summary judgment on Plaintiff's "fifth cause of action," in which he states a claim under 42 U.S.C. § 1981 ("section 1981"), alleging that "[a] motivating factor in the termination of [his] employment was [his] race."  (SAC ¶ 26.) Defendant Von Kleist argues he is entitled to summary judgment on this claim since Plaintiff cannot "provide any evidence of intentional discrimination."  (Von Kleist Mot. for Summ. J. 14:6.)  The School District Defendants also argue they are entitled to summary judgment on Plaintiff's section 1981 claim because there is "no evidence to support his . . . claim that his dismissal was racially motivated," and further, "there were legitimate, non discriminatory reasons for his dismissal."  (School District Defs.' Mot. for Summ. J. 22:28-

23:4.)   Plaintiff rejoins that "Von Kleist's act of calling [Plaintiff] 'Pancho,' speaking to him in a fake Spanish accent, then referring to [Plaintiff] as 'Tubs' . . . combined with Von Kleist's statement that he never would have hired [Plaintiff] in the first place, displays direct evidence of an animus against Plaintiff based on his race."  (Pl.'s Opp'n to Von Kleist Mot. for Summ. J. 15:6-11.)

Plaintiff's section 1981 claim alleges that the "race-related conduct against Plaintiff by Chris Von Kleist, violated 42 U.S.C., Section 1981, which prohibits discrimination or harassment based on an employee's race."  (SAC ¶ 26.)  Plaintiff further alleges "[a] motivating factor in the termination of Plaintiff's employment was Plaintiff's race."  (Id.)  In his opposition brief, Plaintiff explains the School Board Defendants' liability, arguing, "[a]ll of the individual Board Members acted in concert with Von Kleist by providing him unlimited, unchecked authority to take action against [Plaintiff] that Von Kleist wanted . . ." and "three of the Board Members expressly ratified the conduct of Von Kleist at the March 7, 2008 meeting."  (Pl.'s Opp'n to School Board Defs.' Mot. for Summ. J. 15:22-28.)

42 U.S.C. § 1981 provides that all persons "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  "The statute . . . defines 'make and enforce contracts' to 'includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006) (citing 42 U.S.C. § 1981(b)).

To prevail on his section 1981 claim, "[P]laintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.  If the defendant provides such a reason, the burden shifts to the plaintiff to show the employer's reason is a pretext for discrimination." Vasquez v. Cnty of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003) (discussing burden shifting in a Title VII case).[3]  To establish a prima facie case, "the plaintiff may proceed using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer [in taking adverse action against the plaintiff]." Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (quotations and citations omitted). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Id. (quotations and citations omitted).  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (quotations and citations omitted).  Further, "[d]irect evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005) (citations

---

[3]     The Ninth Circuit "applies the same standards to disparate treatment claims pursuant to Title VII, the Age Discrimination in Employment Act (ADEA), and §§ 1981 and 1983." Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1180 n.11 (9th Cir. 1998) (citation omitted).

omitted).  However, "[t]o establish a claim of discrimination, there must be a sufficient nexus between the alleged discriminatory remarks and the adverse employment decision."  Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1180 (9th Cir. 1998) (citing DeHorney v. Bank of Am., 879 F.2d 459, 468 (9th Cir. 1989) (granting defendant summary judgment on plaintiff's section 1981 claim where plaintiff "failed to establish a nexus between the alleged racial slur and the decision to terminate"); see also Linville v. State of Hawaii, 874 F. Supp. 1095, 1108 n.7 (D. Haw. 1994) (stating that to establish a prima facie case through direct evidence, the plaintiff "must not only show . . . animus, she must show a specific link between that animus and the adverse employment decision").

Plaintiff argues there is "direct evidence of an animus against [him] based on his race" that should preclude summary judgment.  (Pl.'s Opp'n to Von Kleist Mot. for Summ. J. 15:9-10.) Plaintiff relies entirely upon his declaration, in which he avers:

> During the 2007-2008 school year, Superintendent Von Kleist often called me "Pancho" and spoke to me in a fake Spanish accent.  This fake Spanish accent was also used by Von Kleist when he called me "Cisco," during meetings. Additionally, Von Kleist often called me "Tubs," because, he said, I reminded him of the television character on Miami Vice . . . .  Von Kleist also told me that he would never have hired me, if it had been up to him.

(Flores Decl. ¶ 11.)

Plaintiff's averments, however, do not establish a "sufficient nexus between the alleged discriminatory remarks" and Plaintiff's termination.  Mustafa, 157 F.3d at 1180; see also Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (finding that superior's comment, that was not directly tied to adverse employment decision, did not support an inference of discrimination); Merrick v.

<u>Farmers Ins. Group</u>, 892 F.2d 1434, 1438-39 (9th Cir. 1990)
(recognizing that "stray remarks" are insufficient to raise an
inference of discrimination and concluding that stray remark by
decision-maker did not raise an inference of discrimination).
Plaintiff, therefore, has not satisfied his burden of demonstrating a
prima facie case in opposing Defendant Von Kleist and the School Board
Defendants' summary judgment motions.  Accordingly, each Defendant's
summary judgment motion on Plaintiff's section 1981 claim is granted.

### D.  Plaintiff's California Military & Veterans Code Claim

        Defendant Von Kleist seeks dismissal of Plaintiff's "fourth
cause of action," which is alleged under the California Military &
Veterans Code, arguing it should be dismissed since it is barred by
the one-year statute of limitations imposed by section 395.1.  (Von
Kleist Mot. for Summ. J. 16:7-13.)  The School Board Defendants also
seek summary judgment on this claim, arguing "[t]here is no evidence
that Defendants 'hindered' or 'attempted to prevent' [Plaintiff] from
performing his military service . . . ."  (School Board Defs. Mot. for
Summ. J. 20:22-24.)  Plaintiff rejoins that this claim was timely
filed and that "Von Kleist showed an animus [towards Plaintiff due to
his military service] and [that] the Board Members, by giving [Von
Kleist] unlimited discretion, authorized him to act on that animus."
(Pl.'s Opp'n to School Board Defs. Mot. for Summ. J. 17:5-25.)

        Plaintiff alleges Defendant Von Kleist and the School Board
Defendants violated California Military and Veterans Code § 394(d)
("section 394(d)") "by hindering and attempting to prevent Plaintiff
from performing his military service and by discharging him from his
employment with the District in part, because of the performance of
ordered military duty."  (SAC ¶ 23.)

Section 394(d) provides in pertinent part:

No employer . . . shall discharge any person from
employment because of the performance of any
ordered military duty or training . . . or hinder
or prevent that person from performing any military
service . . .; prejudice or harm him or her in any
manner in his or her employment, position, or
status by reason of performance of military service
. . .; or dissuade, prevent, or stop any person
from enlistment . . . .

Neither Plaintiff nor Defendants provided authority interpreting section 394(d).  However, it appears that claims brought under California Military and Veterans Code section 394 are analyzed under the framework applicable to claims brought under the federal Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4333.  Bursese v. Paypal, Inc., No. C-06-00636 RMW, 2007 WL 485984, at *6 (N.D. Cal. Feb. 12, 2007) (citing Tarin v. Los Angeles, 123 F.3d 1259, 1266 (9th Cir. 1997) (analyzing state and federal military discrimination claims under the same framework)).  To prevail on his claim, Plaintiff has the "burden of showing, by a preponderance of the evidence, that his . . . [military service] was a substantial or motivating factor in the adverse employment action; the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's [military service]." Leisek v. Brightwood Corp., 278 F.3d 895, 899 (9th Cir. 2002). "Whether an employer has the requisite discriminatory motive is a question of fact.  Nonetheless, the Court may grant summary judgment if it finds there is no genuine dispute as to that fact . . . ." Romero v. Akal Sec., Inc., No. 09 CV 00024 BEN (PCL), 2010 WL 1688163, at *3 (S.D. Cal. Apr. 23, 2010).

Here, Plaintiff's only evidence supporting his section 394(d) claim is his averment that: "[Von Kleist] asked me when I would be getting out of the military and [he] told me that it would be very difficult for Orland if I was redeployed." (Flores Decl. ¶ 11.)  It cannot reasonably be inferred from this averment that Plaintiff's military service was a "substantial or motivating factor" for his termination.  Plaintiff, therefore, has not satisfied his burden in opposing Defendants' summary judgment motions and each Defendant is entitled to summary judgment on this claim.

### E.  Plaintiff's Defamation Claim

Defendants also seek summary judgment on Plaintiff's "sixth cause of action" in which he alleges a defamation claim against Defendants Von Kleist and Martin.  (SAC ¶¶ 29-31.)  Plaintiff alleges "[t]he statements made by Chris Von Kleist and Jack Martin that Plaintiff was a 'Sexual Harasser' and that he had not performed his work duties in a responsible and/or capable manner were slanderous per se, because they tended to injury Plaintiff in his profession."  (Id. ¶ 30.)

Defendant Von Kleist argues he should be granted summary judgment on Plaintiff's defamation claim since Von Kleist's statements were privileged; Plaintiff cannot prove any statement was made with actual malice; and the alleged statements were true.  The School Board Defendants argue summary judgment should be awarded on Plaintiff's defamation claim because Plaintiff has not shown that School Board Defendant Martin made a defamatory statement.

"Defamation is effectuated by either libel or slander." Roberts v. McAfee, Inc., No. C 09-4303 PJH, 2010 WL 890060, at *10 (N.D. Cal. Mar. 8, 2010) (citing Cal. Civ. Code § 44.)  In this case,

Plaintiff's defamation claim is premised upon allegations of slander. "Slander is a false and unprivileged publication, orally uttered . . . which . . . [t]ends directly to injure [an individual] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits . . . ." Cal. Civ. Code § 46.

Plaintiff's only evidence in support of his defamation claim are the following averments:

> [A]fter the termination of my employment, when I was at Chico State in the Education Department one day, I saw Jack Krause, a Professor at the University . . . . He told me that the gentleman that takes care of his yard or pool is the same person that works for Chris Von Kleist and that the gentleman had informed him that Chris Von Kleist stated that I had been sexually harassing a teacher. Additionally, I was informed by a person that I was dating, Cristina Von Bargen, that Board Member Jack Martin had told his wife, who then relayed to a woman's group, that I had been sexually harassing a teacher at Mill Street Elementary School.

(Flores Decl. ¶ 24.)  Defendants object to this evidence, arguing it constitutes inadmissible hearsay.  This objection is sustained.  Cf. GMO Rice v. Hilton Hotel Corp., Civ. A. No. 85-1470, 1987 WL 16851, at *1 (D.D.C. Sept. 1, 1987) (stating that "[i]n this instance, plaintiff seeks to testify that one person ('B') told the plaintiff that another person ('A') made a statement defaming plaintiff.  Plaintiff offers this testimony in an effort to show that 'A' did, in fact, make the defamatory statement.  This is inadmissible hearsay"); see also Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1193 (C.D. Cal. 2002) (inadmissible hearsay insufficient to withstand summary judgment

motion on defamation claim); <u>Albert v. Loksen</u>, 239 F.3d 256, 266 (2d Cir. 2001) (stating "a plaintiff may not rely solely on hearsay . . . that the slanderous statement was made."); <u>Courtney v. Canyon Television & Appliance Rental Inc.</u>, 899 F.2d 845, 851 (9th Cir. 1990) (affirming summary judgment where only evidence of defamation was inadmissible hearsay).  Plaintiff's also relies on <u>Russell v. Geis</u>, 251 Cal. App. 2d 560 (1967), for the proposition that hearsay can be used to prove his defamation claim.  This case, however, does not support Plaintiff's contention.  Since there is no admissible evidence in the record supporting Plaintiff's defamation claim, each Defendant's motion for summary judgment is granted on this claim.

### F.  Plaintiff's False Light Claim

Defendants also seek summary judgment on Plaintiff's "seventh cause of action" in which he alleges a false light claim against Defendants Von Kleist and Martin.  (SAC ¶¶ 32-35.) Specifically, Plaintiff alleges that "[t]he act of Defendants in portraying Plaintiff as a sexual harasser, placed Plaintiff in a false light in the public eye."  (<u>Id.</u> ¶ 34.)

Defendant Von Kleist argues that Plaintiff's false light claim fails for the same reasons his defamation claim fails.  (Von Kleist Mot. for Summ. J. 18:24-26.)  The School Board Defendants also argue summary judgment should be granted on Plaintiff's false light claim because Defendant Martin never made the alleged statements, and because Plaintiff is a public official and he cannot show that the alleged statement was false or made with malice.  (School Board Defs.' Mot. for Summ. J. 27:6-10.)  Plaintiff rejoins that by "[b]y portraying [him] as a 'serial harasser of women,' and 'insubordinate principal,' Defendants placed [Plaintiff] in a false light in the

public eye." (Pl.'s Opp'n to Von Kleist Mot. for Summ J. 19:14-15; Pl.'s Opp'n to School Board Defs.' Mot. for Summ. J. 20:9-14.)

"The elements of the tort of false light invasion of privacy are (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the defendant acted with actual malice." Roberts, 2010 WL 890060, at *11 (citing Fellows v. Nat'l Enquirer, Inc., 42 Cal.3d 234, 238-39 (1986) & Reader's Digest Assn v. Superior Court of Marin County, 37 Cal.3d 244, 265 (1984)).

Plaintiff's false light claim, however, fails for the same reason as his defamation claim. Plaintiff has presented no admissible evidence that either Defendant Von Kleist or Defendant Martin caused any "false or misleading" publicity to be generated. Therefore, each Defendant's summary judgment motion is granted on Plaintiff's false light claim.

### G.  Plaintiff's Request for Injunctive Relief

Plaintiff's "eighth cause of action," seeks an "injunction commanding Defendants to return him to his previous position as Principal with the Orland Unified School District." (SAC ¶ 37.) Defendant Von Kleist argues summary judgment should be entered on Plaintiff's request for injunctive relief since injunctive relief may not be awarded against officials sued only in their personal capacities. (Von Kleist Mot. for Summ. J. 19:20-27.) The School Board Defendants also argue "there is no basis for suing a government official in his or her individual capacity for declaratory or injunctive relief." (School Board Defs.' Mot. for Summ. J. 27:18-28.)

Plaintiff alleges that "[t]his cause of action is based on Defendants' failure to provide necessary due process under the 14th

[sic] Amendment . . ., Defendants' violation of [California Military and Veterans Code section 394] . . . and violation of 42 U.S.C., Section 1981." However, only Plaintiff's procedural due process claim related to Defendants' failure to provide him with a conference with the Superintendent survives Defendants' summary judgment motions. Further, Plaintiff has alleged his procedural due process claims against Defendants "in [t]heir [p]ersonal [c]apacities [o]nly." Section 1983, however, "does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." <u>Greenawalt v. Indiana Dept. of Corr.</u>, 397 F.3d 587, 589 (7th Cir. 2005) (citing <u>Luder v. Endicott</u>, 253 F.3d 1020, 1024-25 (7th Cir. 2001)). Therefore, each Defendant's motion for summary judgment on Plaintiff's request for injunctive relief is granted.

### IV.   CONCLUSION

For the reasons stated above, Defendant Von Kleist and the School Board Defendants' motions for summary judgment are granted and denied in part.

Dated:  September 9, 2010

GARLAND E. BURRELL, JR.
United States District Judge